Tina Miller, Esq.                                             September 20, 2013
Special Master
Civil Action Nos. 2:12-cv-01640; 2:12-cv-00879; 2:12-cv-00887; 2:12-cv-00869; 2:12-cv-1604;
2:12-cv-00878; 2:12-cv-00876; 2:12-cv-00863; 2:12-cv-00881; 2:12-cv-01641; 12-cv-00089;
2:12-cv-00891; 2:12-cv-00883; 2:12-cv-00877; 2:12-cv-01629; 2:12-cv-01642; 2:12-cv-01643;
Misc. No.12-244, MDL No. 244

Dear Special Master Miller:

The Moving Parties provide the following reply to Maxim's and Apple's responses to the Moving Parties' Motion to Compel Maxim to Produce Apple Information.

I. **THE MOVING PARTIES' REPLY TO MAXIM**

   A. **It Is Undisputed That Moving Parties Are Entitled To The Apple Information**

Maxim does not deny that the Moving Parties are entitled to the Apple information in response to RFP Nos. 26 and 27. Instead, Maxim argues only that the Apple protective order ("APO"), entered in four of the 25 pending cases in this MDL, precludes production. Maxim's position begs the question: why did Maxim enter the APO in just four cases despite knowing that the Moving Parties could not agree to it? Maxim does not answer this question. Maxim also fails to address the clear inequity resulting from its actions: Maxim has access to information that is indisputably relevant to this matter but to which Moving Parties lack access.

The fundamental unfairness caused by Maxim's conduct is evident. But Maxim tries to divert attention from this unfairness by complaining that the Moving Parties refused in turn to confirm that they did not rely on "information received from prior art practitioners (and withheld as their work product) in forming their claim construction positions." (Maxim Resp. at 1). Maxim's complaint rings hollow, considering that any communications that a Moving Party may have had about prior art for the purpose of this litigation are privileged by at least the work-product doctrine and properly withheld. *Cottillion v. United Ref. Co*, 279 F.R.D. 290, 302 (W.D. Pa. 2011). In contrast, the Apple materials produced to Maxim indisputably are not privileged. Maxim cannot detract from the inequity that it has caused with this diversionary tactic, or worse, try to leverage its possession of Apple materials to obtain admissions from the Moving Parties.

Maxim's contradictory positions cannot be ignored. While Maxim previously argued in this matter that a prosecution bar would unfairly prejudice its counsel of choice, Michael North (Dkt. 115, at 19-20), it now argues in favor of Apple's bar despite worse prejudice to the Moving Parties' counsel of choice. This Court denied the Moving Parties' proposed bar on Maxim's assertions of prejudice and sufficiency of the Default Protective Order ("DPO"), and similarly should do so here, particularly considering that the harms to the Moving Parties are even greater than those previously asserted by Maxim. (A full discussion of those harms appears below.) Maxim's inconsistent positions on prosecution bars should be seen for what they are: pure litigation tactics. Maxim first ***objected*** to the bar proposed by the Moving Parties; Maxim then ***agreed*** to Apple's bar, as well as that of Google/Motorola; and recently, Maxim ***objected*** to a request by non-party Monitise for a bar—threatening a motion to compel Monitise to produce

documents under the DPO, and contradicting its own position that non-parties are entitled to more protection. (Ex. A).[1] Thus, Maxim's arguments cannot be taken seriously.

### B. Conclusion

The inequities of Maxim's unilateral possession and potential leveraging of the Apple information should be remedied by compelling Maxim to produce this information to the Moving Parties under the protective orders already operating in their cases, and further barring Maxim from using the Apple information until all the Moving Parties have access to them.

## II. THE MOVING PARTIES' REPLY TO APPLE

### A. In Adopting The DPO, This Court Considered Prosecution Bars And Non-Parties

Apple's arguments justifying a bar (Apple Resp. at 2) largely are mooted by the fact that one already exists in the DPO, which states: "Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances for ***prosecuting any patent application, for patent licensing or for any other purpose***." Appx. LPR 2.2(2). The DPO also explicitly applies to non-parties, stating: "[t]his Order and any amendments or modifications hereto . . . shall govern any document, information or other thing furnished by any party, to any other party, and includes ***non-parties*** who receive a subpoena in connection with this action." *Id.* 2.2(1). Thus, in adopting the DPO, this Court already ***considered and rejected*** broader prosecution bars, and expressly mandated the application of the DPO to non-parties like Apple.

### B. Apple Fails To Establish Good Cause For A Patent Prosecution Bar

Neither Maxim nor Apple has made an adequate showing of an "unacceptable risk of disclosure" justifying entry of the APO in the Moving Parties' cases, particularly in light of the protections already in place. *See In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).[2] Regardless, even a finding of a risk of disclosure "does not end the inquiry and is not enough to justify the issuance of a patent prosecution bar." *Id.; see also Helferich Patent Licensing, L.L.C. v. New York Times Co.*, No. 10-4387, 2013 U.S. Dist. LEXIS 87374, at *13 (N. D. Ill. June 21, 2013). Rather, the risk must be weighed against the harm that may occur from imposition of a bar, including the prejudice from denying a party access to counsel of its choice. *Id.* That prejudice is great here and outweighs any alleged risk of disclosure, as detailed below.

Notably, neither Maxim nor Apple cites any authority for the proposition that non-parties are entitled protections beyond those expressly provided, such as an additional prosecution bar. They cite only cases that are inapposite. *See, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) (court affirmed denial of motion to compel information from non-parties in view of their First Amendment rights); *Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646 (9th Cir. 1980) (court upheld order quashing subpoena to non-party to honor agreement not to

---

[1] In contrast, the Moving Parties ***consistently*** have shown that a bar would prejudice them, as evidenced by their prior request for a ***one-way bar*** binding only Maxim, and their refusal to sign the APO and the Google/Motorola PO.

[2] Apple has not provided any showing that certain Moving Parties or their counsel are involved in the prosecution activities addressed by *Deutsche Bank*; thus, there is no basis whatsoever to enter its bar in their cases. (Ex. B.)

engage in discovery against the non-party); *FTC v. AMG Servs.*, 2013 U.S. Dist. LEXIS 74247 at *20 (D. Nev. May 23, 2013) (court held that FTC could move for protective order to modify subpoenas to non-party consumers seeking financial information without restrictions); *Tetratec Corp. v. E.I. Dupont De Nemours & Co.*, 1992 U.S. Dist. LEXIS 12101 at *4 (E.D. Pa. Aug. 11, 1992) (court granted non-party right to object to party's motion to compel); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (court upheld Magistrate's order that non-party documents failed relevance test). None of these cases support Apple's justification for its prosecution bar.

Apple raises three more points in support of its bar: (1) it is necessary to guard against inadvertent disclosure; (2) Apple's information is more sensitive than Moving Parties'; and (3) Apple is entitled to elevated protection. (Apple Resp. at 2-3). Apple is wrong on all points.

### (1) Apple's patent prosecution bar is not necessary and is unreasonably broad

Apple's bar is not necessary because the DPO's bar already safeguards against any risk of inadvertent disclosure. For example, the prohibited activities in Apple's bar ("advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications…") fall within the scope of activities already barred by the DPO ("for any other purpose"). Apple's bar does not offer any more safeguards over the DPO in prohibited activities.

Apple's bar does, however, broaden the prohibited ***subjects*** to include those "***relating to*** the (i) SSL or TLS protocols ***or*** (ii) functionality, operation, and design of hardware/software acceleration...." (APO at 5). This "proscribed field" is unreasonably broad and vague. A practitioner bound by the APO would be precluded from prosecuting patents on technologies unrelated to the asserted patents or Apple information, by virtue of their subjects merely ***relating*** to SSL or TLS encryption. A practitioner would be prohibited from prosecuting patents in fields as diverse as medicine (medical information systems that send test results to patients), education (online courses that grade students), social media (online communities whose members exchange communications), investigations (databases that provide criminal records), or virtually any industry that sends secure data over the internet. Similarly, a practitioner prosecuting patents relating to online banking transactions may be prohibited from doing so as such transactions often implement SSL or TLS, even if the patents do not mention such protocols. The widespread use of SSL/TLS encryption is evident by their availability to the public in ***open source*** software.

Apple does not deny the pervasiveness of SSL/TLS protocols. Instead, it only complains that "Apple does not have control over the breadth of the technology in this case." (Apple Resp. at 2). Apple's assertion incorrectly assumes that its proscribed field accurately captures the "technology in this case." But, the technology in this case is more targeted. The asserted patents are generally directed to systems and methods for performing secured transactions or communicating valuable data, including a cash equivalent, to and from portable modules. The patents also relate to specific hardware dedicated to handling the complex mathematics of modular exponentiation for encryption and decryption. Apple's proscribed field is improperly broader than the technology in the patents ***and*** Apple's products. Indeed, Apple has "control" over the breadth of its proscribed field, but purports to lack control because it is unwilling to work with the Moving Parties on correcting its scope. But in other cases, Apple agreed to or argued for bars as narrowly limited to the ***claims*** of the asserted patents, or to the ***specific subject*** of the designated information it produces (Ex. C at 22; Ex. D at 27; Ex. E at 12; Ex. F at 16-17).

Accordingly, Apple's contention that its bar "is no broader than it needs to be, given the technologies at issue" (Apple Resp. at 2) clearly is not the case. The subject matter of Apple's bar indeed is broader than it needs to be. Apple's overbroad bar is not reasonably commensurate to the "inherent" risk of inadvertent disclosure and is not more effective than other deterrents already in place, such as contempt of the DPO, sanctions, and professional ethical obligations.[3]

**(2) Apple's information is not more sensitive, nor entitled to elevated protection**

The Moving Parties include federally insured financial institutions and banks whose systems manage billions of dollars of funds transfers and accounts balances, and maintain highly sensitive personal data for hundreds of thousands of users. The Moving Parties also include retailers and business enterprises that, like the financial institutions, must protect the integrity of secured transactions. The Moving Parties' confidential information thus includes proprietary mobile software applications and corresponding proprietary backend systems designed to protect against unauthorized access to computer systems, personal data and electronic bank vaults. Accordingly, Apple is in no position to assert that its confidential information is "considerably more sensitive" than that of the Moving Parties. (Apple Resp. at 3). Nor is Apple in any position to assert that the potential harms of inadvertent disclosure to Apple alone is of a "significantly greater magnitude" than to more than 20 financial institutions and retailers. (*Id*.)

Contrary to Apple's assertion, the Moving Parties do not seek "less protection" for Apple, but the same protections afforded to them under the DPO and the Supplemental P.O. Such protections are adequate for Apple, which does not compete with the Moving Parties. This point is supported by the only case that Apple cites for its position that it is entitled elevated protection, *Bausch & Lamb, Inc. v. CooperVision, Inc*., which held that a non-party was entitled to additional protections because of its status as a ***competitor***. *Bausch & Lamb, Inc. v. CooperVision, Inc*., No. 1:06-CV-2620D, 2006 WL 901687, at *2 (N.D. Ga. Apr. 5, 2006) ("the Court believes that Bausch & Lomb's interest in its inside counsel having access to CIBA's confidential technical information is outweighed by CIBA's interest in keeping the information away from inside counsel at its competitor companies."). Apple thus fails to provide a plausible argument that its information is entitled to more protection than the Moving Parties'.

C. **The Definite Harms To Moving Parties Outweigh Any Amorphous Risk to Apple**

The Moving Parties submit with this Reply declarations detailing the significant harms to them that would result from Apple's prosecution bar. (Ex. G-P). The Moving Parties would be forced to choose among the following untenable and prejudicial courses of action: (i) proceed in this litigation without information made available to Maxim by Apple that is critical to analyzing the merits of the asserted claims; (ii) proceed in this litigation with new counsel, deprived of counsel of their choice, some of whom have been heavily involved in this matter for over a year and a half; (iii) seek new counsel for prosecution or acquisition matters, deprived of counsel of their choice, some of whom they have relied on for years; or (iv) require their counsel and/or experts to severely limit their practices, gainful employment or business opportunities for years.

---

[3] As Maxim previously argued with respect to its counsel (Mr. North), counsel in this matter are also subject to this Court's order and "numerous ethical and legal obligations" that prevent them from using confidential information learned from this litigation to prosecute patents, thus obviating the need for a prosecution bar. (Dkt. 115, at 20).

Unfortunately, these concerns could have—and should have—been addressed long ago. Maxim was well-aware that non-parties, including Apple, would play a role in this litigation. Indeed, Maxim not only referenced these non-parties in its infringement contentions, but served its subpoena on Apple in November 2012. Had Maxim timely addressed these non-party protective order and patent prosecution bar issues earlier in this matter, the Moving Parties would have had an opportunity to make informed decisions about their choice of counsel or experts. *See Helferich*, 2013 U.S. Dist. LEXIS 87374 at *15 (rejecting a bar because of failure to seek it earlier in litigation; doing so would have resulted in counsel making "a more informed decision about [who] should be reviewing Defendants' documents so as to shield some ... attorneys from any prosecution bar that may have been entered at the time."). But this matter is now in the final stages of claim construction and the Moving Parties have spent considerable time analyzing non-infringement and invalidity positions. The Moving Parties' counsel "have acquired expertise in the patents-in-suit as well as the relationship between [Maxim's] claim language" and their invalidity and non-infringement positions. *See Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182 (D. Del. 2010). Forcing a bar on the Moving Parties now would seriously prejudice them. *See* Ex. G-P; *see also Helferich*, 2013 U.S. Dist. LEXIS 87374 at *16.

Apple characterizes these significant harms as mere "inconvenience"; but this is belied by Apple's illusory proposed solutions. (Apple Resp. at 3). Apple's first proposal—that individual parties seek from Apple an exemption from its bar—is dependent on Apple's good graces, which it refused to offer Capital One that sought just such an exemption. *See* Ex. Q (email from Apple denying Capital One's request). Capital One's request for an exemption squarely contradicts Apple's amazing contention that "no defendant has approached Apple with any specific information about its counsel's practice to request an exemption." (Apple Resp. at 4.)

Apple's second proposal to address the "inconvenience"—that the Moving Parties have individuals not involved in prohibited activities review Apple's materials—also is illusory, as it is based on the premise that the Moving Parties can easily retain substitutes, and inexpensively and quickly bring them up to speed to the level of the Moving Parties' current counsel. Apple's second option almost certainly would cause the Moving Parties to waste hundreds of thousands, if not millions, of dollars in hiring and educating new attorneys, experts or teams. What Apple calls "inconvenience" can be valued by enormous calculable fees and lost opportunities that the Moving Parties would ***actually*** incur under the APO. In contrast, Apple cannot define, no less value, the purported injuries to Apple from a ***hypothetical*** event of misuse of its information—which misuse would be in direct contravention of the DPO already in effect. The "potential injury" to the Moving Parties clearly outweighs that to Apple when comparing the certainty of harm to the Moving Parties to the unlikelihood of harm to Apple under the DPO.

### D. <u>Conclusion</u>

The APO's bar does not reasonably reflect the risk of inadvertent disclosure in light of adequate deterrents already in place, including a prosecution bar in the DPO. The harms of Apple's bar to the Moving Parties are substantial and can be shown in certain, quantifiable terms to outweigh any risk of disclosure to Apple. The Moving Parties' requested relief offers the best results for everyone: Apple benefits from the same protections provided to direct competitors, the Moving Parties avoid wasteful expenses, and information balance with Maxim is restored.

Dated: September 20, 2013                                   Respectfully submitted,


 /s/ Kevin J. Culligan                                       /s/ Maya M. Eckstein
Kirsten R. Rydstrom                                         Stephen S. Stallings
PA ID No. 76549                                             P.A. Bar No. 205131
krydstrom@reedsmith.com                                     **BURNS WHITE LLC**
**REED SMITH LLP**                                          Four Northshore Center
Reed Smith Centre                                           106 Isabella Street
225 Fifth Avenue                                            Pittsburgh, PA 15212
Pittsburgh, PA 15222                                        Tel: (412) 955-3276
Telephone: (412) 288-3131                                   Fax: (412) 995-3300
Facsimile: (412) 288-3063                                   sstallings@burnswhite.com

Kevin J. Culligan                                           Maya M. Eckstein
John P. Hanish                                              **HUNTON & WILLIAMS LLP**
Jonathan A. Auerbach                                        Riverfront Plaza, East Tower
**GOODWIN PROCTER LLP**                                     951 East Byrd Street
The New York Times Building                                 Richmond, VA 23219
620 Eighth Avenue                                           Tel: (804) 788-8200
New York, NY 10018-1405                                     Fax: (804) 788-8218
Telephone: (212) 813-8800                                   meckstein@hunton.com

*Counsel for Bank of America, N.A., Bank of*                Daniel G. Vivarelli, Jr.
*America Corporation and Merrill Lynch,*                    **HUNTON & WILLIAMS LLP**
*Pierce, Fenner & Smith Incorporated*                       2200 Pennsylvania Avenue, N.W.
                                                            Washington, D.C. 20037
                                                            Tel: (202) 955-1500
                                                            Fax: (202) 778-2201
 /s/ Benjamin B. Lieb                                       dvivarelli@hunton.com
Benjamin B. Lieb
blieb@sheridanross.com                                      *Counsel for Capital One*
George T. Scott                                             *National Association; Capital One Bank,*
jscott@sheridanross.com                                     *USA, National Association; and*
**SHERIDAN ROSS P.C.**                                      *Capital One Services, LLC*
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
Telephone:       303-863-9700
Facsimile:       303-863-0223
E-mail:          litigation@sheridanross.com

*Counsel for Chipotle Mexican Grill, Inc.*

| | |
|---|---|
| /s/Joshua D. Curry | /s/ Soyoung Jung |
| John E. Hall | Jeffrey A. Finn |
|     Pennsylvania Bar No. 11,095 | Soyoung Jung |
| Carolyn Batz McGee | **KATTEN MUCHIN ROSENMAN LLP** |
|     Pennsylvania Bar No. 208,815 | 2029 Century Park East, Suite 2600 |
| **ECKERT SEAMANS** | Los Angeles, California 90067-3012 |
| **CHERIN & MELLOTT LLC** | Telephone: (310) 788-4494 |
| 600 Grant Street, 44th Floor | Facsimile: (310) 712-8401 |
| U.S. Steel Tower | Email: jeffrey.finn@kattenlaw.com |
| Pittsburgh, PA 15219 | Email: soyoung.jung@kattenlaw.com |
| Email: jhall@eckertseamans.com | |
|       cmcgee@eckertseamans.com | Dennis C. Lee |
| | **KATTEN MUCHIN ROSENMAN LLP** |
| William F. Long | 525 W. Monroe Street |
|     Georgia Bar No. 457,490 | Chicago, IL 60661-3693 |
| Joshua D. Curry | Telephone: (312) 902-5200 |
|     Georgia Bar No. 117,378 | Facsimile: (312) 902-1061 |
| Tara C. Stuart | Email: dennis.lee@kattenlaw.com |
|     Georgia Bar No. 644,207 | |
| **MCKENNA LONG & ALDRIDGE LLP** | *Counsel for Deutsche Bank AG New York* |
| 303 Peachtree Street, Suite 5300 | *Branch, Deutsche Bank Trust Company* |
| Atlanta, GA 30308 | *Americas, Deutsche Bank Trust Corporation* |
| Tel:    404-527-4000 | *and Deutsche Bank AG* |
| Fax:    404-527-4198 | |
| Email:  blong@mckennalong.com | |
|         jcurry@mckennalong.com | |
|         tstuart@mckennalong.com | |
| | |
| *Counsel for Defendant Comerica, Inc.* | |
| | /s/ James C. Yoon |
| | James C. Yoon |
| | Ryan R. Smith |
| | **WILSON SONSINI GOODRICH & ROSATI PC** |
| | 650 Page Mill Road |
| | Palo Alto, California 94304- 1050 |
| | jyoon@wsgr.com |
| | |
| | *Counsel for Groupon, Inc.* |

/s/ Elvin Y. Lee
Wayne Barsky
*Lead Attorney*
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East
Los Angeles, CA 90067-3026
Telephone: 310.552.8500
Fax: 310.551.8741
wbarsky@gibsondunn.com

Elvin Y. Lee
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Fax: 650.849.5333
elee@gibsondunn.com

Mandy Pezzano
Texas SBN 24074886
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Telephone: 214.698.3100
Fax: 214.571.2900
mpezzano@gibsondunn.com

*Counsel for Defendants Expedia, Inc., a Washington corporation; Expedia, Inc., a Delaware corporation; Mobiata, LLC; Hotels.com LP; Hotels.com GP, LLC; and Hotwire Inc.*

/s/ Russell S. Jones
Russell S. Jones, Jr., MO # 30814
Joshua M. McCaig, MO # 56059
**POLSINELLI PC**
120 West 12th Street, Suite 1700
Kansas City, MO 64105
Telephone: 816-421-3355
Facsimile: 816-374-0509
rjones@polsinelli.com
jmccaig@polsinelli.com

Richard P. Stitt KS# 14268
**POLSINELLI PC**
6201 College Blvd., Suite 500
Overland Park, KS 66211
Telephone: 913-451-8788
Facsimile: 913-451-6205
rstitt@polsinelli.com

Clifford B. Levine, Pa. Id. No. 33507
Richard A. Ejzak, Pa. Id. No. 56699
Thomas H. Soehl, Pa. Id. No. 311921
**COHEN & GRIGSBY, P.C.**
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Telephone: 412-297-4900
Facsimile: 412-209-1853
clevine@cohenlaw.com
rejzak@cohenlaw.com
tsoehl@cohenlaw.com

*Counsel for First United Bank & Trust Co. and Jack Henry & Associates, Inc.*

| | |
|---|---|
| /s/ Lionel M. Lavenue<br>Lionel M. Lavenue, Esq.<br>lionel.lavenue@finnegan.com<br>James J. Boyle, Esq.<br>james.boyle@finnegan.com<br>Michael V. Young, Sr., Esq.<br>michael.young@finnegan.com<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT &**<br>**DUNNER, LLP**<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA 20190-5675<br><br>Tel:  (571) 203-2700<br>Fax: (202) 408-4400<br><br>Elizabeth A. Laughton, Esq.<br>elizabeth.laughton@finnegan.com<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT &**<br>**DUNNER, LLP**<br>901 New York Avenue, N.W.<br>Washington, D.C. 20001-4413<br>Tel:  (202) 408-4000<br>Fax: (202) 408-4400<br><br>*Counsel for The PNC Financial Service Group, Inc. & PNC Bank, N.A.* | /s/ Bijal Vakil<br>Samuel W. Braver<br>PA I.D. No. 19682<br>Ralph G. Fischer<br>PA I.D. No. 200793<br>BUCHANAN INGERSOLL & ROONEY PC<br>One Oxford Centre<br>301 Grant Street, 20th Floor<br>Pittsburgh, PA 15219-1410<br>Telephone 412.562.8800<br>Facsimile 412.562.1041<br>samuel.braver@bipc.com<br>ralph.fischer@bipc.com<br><br>Bijal V. Vakil<br>CA State Bar No.: 192878<br>Shamita D. Etienne-Cummings<br>CA State Bar No.: 202090<br>WHITE & CASE LLP<br>3000 El Camino Real<br>Five Palo Alto Square 9th Floor<br>Palo Alto, CA 94306<br>Telephone 650.213.0300<br>Facsimile: 650.213.8158<br>bvakil@whitecase.com<br>setienne@whitecase.com<br><br>*Counsel for JP Morgan Chase & CO. and JP Morgan Bank, N.A.* |
| /s/ Keith D. Willis<br>Timothy S. Durst<br>Texas Bar No. 00786924<br>tim.durst@bakerbotts.com<br>Keith D. Willis<br>Texas Bar No. 24067942<br>keith.willis@bakerbotts.com<br>**BAKER BOTTS L.L.P.**<br>2001 Ross Avenue, Suite 10000<br>Dallas, Texas 75201-2980<br>Telephone: 214-953-6500<br>Facsimile: 214-953-6503<br><br>*Counsel for Defendant QVC, Inc.* | /s/ Max Ciccarelli<br>Max Ciccarelli<br>Texas State Bar No. 00787242<br>Max.Ciccarelli@tklaw.com<br>Vishal Patel<br>Texas State Bar No. 24065885<br>Vishal.Patel@tklaw.com<br>**THOMPSON & KNIGHT LLP**<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201–2533<br>Phone: 214.969.1700<br><br>*Counsel for Southwest Airlines Co.* |

/s/ Michael Chibib
John A. Schwab, Esquire
Pa. I.D. No.: 89596
**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
(412) 263-1849
jas@peitragallo.com

Michael Chibib
TX State Bar No. 00793497
michael.chibib@bgllp.com
Benjamin L. Bernell
TX State Bar No. 24059451
ben.bernell@bgllp.com
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel: 512-472-7800
Fax: 800-404-3970

*Counsel for Defendant Starbucks Corporation*

/s/ Daniel M. Lechleiter
Eric G. Soller
Pennsylvania I.D. No. 65560
**PIETRAGALLO GORDON ALFANO BOSICK &RASPANTI, LLP**
One Oxford Centre
The Thirty-Eighth Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-2000
Facsimile: (412) 263-2001
E-mail: egs@pietragallo.com

R. Trevor Carter
Indiana Bar No. 18562-49
Daniel M. Lechleiter
Indiana Bar No. 25675-49
**FAEGRE BAKER DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1750
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-mail: trevor.carter@faegrebd.com
daniel.lechleiter@faegrebd.com

Christopher L. Larson
Colorado Bar No. 41,330
**FAEGRE BAKER DANIELS LLP**
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203-4532
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
E-mail: chris.larson@faegrebd.com

*Counsel for Defendant Target Corporation*

  /s/ Kadie M. Jelenchick  
Naikang Tsao  
WI Bar No. 1036747  
**FOLEY & LARDNER LLP**  
150 East Gilman Street  
Madison, WI 53703  
Telephone: (608) 258-4250  
Facsimile: (608) 258-4258  
E-mail: ntsao@foley.com  

Kadie M. Jelenchick  
WI Bar No. 1056506  
**FOLEY & LARDNER LLP**  
777 East Wisconsin Avenue  
Milwaukee, WI 53202  
Telephone: (414) 319-7324  
Facsimile: (414) 297-4900  
E-mail: kjelenchick@foley.com  

Jeffrey W. Spear  
Pa. I.D. No. 56838  
**DUANE MORRIS LLP**  
600 Grant Street, 50th Floor  
Pittsburgh, PA 15219  
Telephone: (412) 497-1055  
Facsimile: (412) 202-4303  
E-mail: JWSpear@duanemorris.com  

Jessica Priselac  
Pa. I.D. No. 208524  
**DUANE MORRIS LLP**  
30 South 17th Street  
Philadelphia, PA 19103  
Telephone: (215) 979-1159  
Facsimile: (215) 827-5486  
E-mail: JPriselac@duanemorris.com  

*Counsel for Defendants U.S. Bancorp and U.S. Bank National Association*

  /s/ Kevin S. Katona  
Steven S. Baik  
CA ID No. 184622  
sbaik@reedsmith.com  
**REED SMITH LLP**  
1510 Page Mill Road, Suite 110  
Palo Alto, CA 94304  
Phone: (650) 352-0500  
Fax: (650) 352-0699  

Kirsten R. Rydstrom  
PA ID No. 76549  
krydstrom@reedsmith.com  
Kevin S. Katona  
PA ID No. 91651  
kkatona@reedsmith.com  
**REED SMITH**  
Reed Smith Centre  
225 Fifth Avenue  
Pittsburgh, PA 15222  
Tel: (412) 288-3131  
Fax: (412) 288-3063  

Khurram Nasir Gore  
PA ID No. 307628  
kgore@reedsmith.com  
**REED SMITH LLP**  
2500 One Liberty Place  
1650 Market Street  
Philadelphia, PA 19103-7301  
Telephone: (215) 851-8100  
Facsimile: (215) 851-1420  

*Counsel for Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 20th day of September, 2013 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will issue an electronic notification of filing to all counsel of record.

*/s/ Elvin Y. Lee*
Elvin Y. Lee